IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

WESLEY JAMES GARRETT,

               Plaintiff,                          No. 3:11-cv-788-HZ

        v.

NEW HAMPSHIRE INSURANCE               OPINION & ORDER
COMPANY, a division of CHARTIS, INC.,

               Defendant.

Stephen C. Hendricks
HENDRICKS LAW FIRM, P.C.
1425 S.W. 20th Avenue, Ste 201
Portland, Oregon 97201

       Attorney for Plaintiff

Donald J. Verfurth
GORDON & REES LLP
701 5th Avenue, Suite 2100
Seattle, Washington 98104

       Attorney for Defendant

1 - OPINION & ORDER

HERNANDEZ, District Judge:

Plaintiff Wesley James Garrett brings this "statutory insurance claim" against defendant New Hampshire Insurance Company, pursuant to Oregon Revised Statute § (O.R.S.) 742.031. Plaintiff seeks payment of a judgment plaintiff obtained against Stanley Christopher Baller as a result of injuries plaintiff suffered in an accident which occurred while plaintiff was a passenger in a truck driven by Baller and owned by Warrenton Fiber Company. At the time of the accident, both plaintiff and Baller worked for Warrenton Fiber, defendant's insured.

Both parties move for summary judgment. I grant defendant's motion. I grant plaintiff's motion on the issue of initial coverage; to the extent plaintiff's motion seeks summary judgment on the exclusion issue, I deny the motion.

BACKGROUND

The motor vehicle accident occurred on December 28, 2009, while plaintiff was a passenger in a 2006 Ford F-350 pickup truck. Ex. 3 to Dec. 7, 2011 Hendricks Decl. (Stipulated Facts) at ¶ 3. Defendant issued a Commercial Automobile Policy, policy number 01-CA-015847348-1/000 ("the commercial policy"), to Warrenton Fiber, from September 3, 2009 to September 3, 2010. Id. at ¶ 4. Defendant also issued an Umbrella Policy to Warrenton Fiber, policy number 01-UD-015845293-1 ("the umbrella policy"), from September 3, 2009 to September 3, 2010. Id.

The 2006 Ford F-350 pickup is listed in the commercial policy as one of the automobiles owned by Warrenton Fiber. Id. at ¶ 5. Under the commercial policy, an individual qualifies as an insured if using a covered automobile owned by Warrenton Fiber with Warrenton Fiber's permission. Id. at ¶ 6. Baller, as the driver of the truck, was a permissive driver on the date of

2 - OPINION & ORDER

the accident and therefore, is an insured under the commercial policy and the umbrella policy.
Id. at ¶ 1.  The commercial policy provides that defendant will pay all sums an insured legally
must pay as damages because of "bodily injury" to which the insurance applies, caused by an
"accident," and resulting from the use of a covered "auto."  Id. at ¶ 7.

Shortly after the accident, plaintiff filed for workers' compensation benefits.  Ex. 4 to
Dec. 22, 2011 Verfurth Decl.  Plaintiff's workers' compensation claim was accepted by SAIF, the
insurer, on February 18, 2010, with additional injuries accepted on March 12, 2010, and August
10, 2010.  Ex. 6 to Dec. 22, 2011 Verfurth Decl.  Plaintiff currently receives workers'
compensation benefits as a result of the injuries he sustained in the accident.  Ex. 7 to Dec. 22,
2011 Verfurth Decl. (Plf. Depo.) at pp. 31, 33, 34.

Plaintiff sued Baller for his injuries.  Ex. 3 to Dec. 7, 2011 Hendricks Decl. at ¶ 8.
Defendant did not provide a defense to Baller.  Id. at ¶ 12.  A default judgment against Baller was
filed on April 25, 2011, in the amount of $1,865,120.  Id. at ¶ 14; Ex. 4 to Dec. 7, 2011
Hendricks Decl.

STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact
and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The
moving party bears the initial responsibility of informing the court of the basis of its motion, and
identifying those portions of "'the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence
of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting
Fed. R. Civ. P. 56(c)).

3 - OPINION & ORDER

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court views inferences drawn from the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. Long v. City & County of Honolulu, 511 F.3d 901, 905 (9th Cir. 2007).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

DISCUSSION

Plaintiff brings his claim under an Oregon statute which provides:

> A policy of insurance against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable . . . shall contain within such policy a provision substantially as follows: "Bankruptcy or insolvency of the insured shall not relieve the insurer of any of its obligations hereunder. If any person or legal representative of the person shall obtain final judgment against the insured because of any such injuries, and execution thereon is returned unsatisfied by reason of bankruptcy, insolvency or any other cause, or if such judgment is not satisfied within 30 days after it is rendered, then such person or legal representatives of the person may proceed against the insurer to recover the amount of such judgment, either at law or in equity, but not exceeding the limit of this policy applicable thereto."

O.R.S. 742.031. The statute serves to give plaintiff a direct right of action against the insurer.

4 - OPINION & ORDER

Kollman v. Nat'l Union Fire Ins. Co. of Pitts., No. CV-04-3106-CO, 2007 WL 865679, at *19 (D. Or. Mar. 15, 2007).

In disputes involving insurance policies, the insured has the initial burden of establishing conditions of coverage, and the insurer has the burden of establishing that the policy excludes coverage. Employers Ins. of Wausau v. Tektronix, Inc., 211 Or. App. 485, 509, 156 P.3d 105, 119 (2007). The parties have stipulated as follows: "Mr. Baller was a permissive driver on 12/28/09 and is, therefore, an insured under the New Hampshire primary and excess policies and thus, is entitled to coverage for damages alleged by Mr. Garrett, subject to applicable exclusions to coverage found in the policies." Ex. 3 to Dec. 7, 2011 Hendriks Dec. at ¶ 1. Given this, plaintiff meets his burden of establishing coverage. The question is whether there is an applicable exclusion.

I. General Standards for Interpreting Insurance Policies

The "question of [insurance] policy interpretation is one of law, and [the court's] task is to determine the intent of the parties[.]" Groshong v. Mut. of Enumclaw Ins. Co., 329 Or. 303, 307, 985 P.2d 1284, 1287 (1999) (citation omitted); see also Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or., 313 Or. 464, 469, 836 P.2d 703, 706 (1992) ("[T]he primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties.") (internal quotation marks and brackets omitted). The court determines the parties' intent "from the terms and conditions of the policy." Groshong, 329 Or. at 307, 985 P.2d at 1287.

A term is ambiguous if

two or more plausible interpretations of that term withstand scrutiny, *i.e.*,

continues to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole.

Hoffman Constr., 313 Or. at 470, 836 P.2d at 706.

When the policy does not define the terms at issue, the court "resort[s] to various aids of interpretation to discern the parties' intended meaning." Groshong, 329 Or. at 307-08, 985 P.2d at 1287. The court first examines the plain meaning of the term at issue. Id. at 308, 985 P.2d at 1287. If the meaning of the term or phrase at issue "is not, on its face, plain, [the court] proceed[s] to [its] second aid to interpretation[-] . . . examin[ing] the phrase in light of the particular context in which [it] is used in the policy and the broader context of the policy as a whole." Id. at 312, 985 P.2d at 1289 (internal quotation marks omitted).

If, after application of such analysis, the court determines that the term is ambiguous, the court may then consider extrinsic evidence in interpreting the insurance contract. Protection Mut. Ins. Co. v. Mitsubishi Silicon Am. Corp., 164 Or. App. 385, 397-98, 992 P.2d 479, 486 (1999) (court may consider extrinsic evidence in interpreting an insurance contract only if it first finds the policy to be ambiguous). Finally, if there is no relevant extrinsic evidence to consider or the term remains ambiguous, the term is to be construed against the insurer, the party which drafted the policy. Hoffman, 313 Or. at 470-71, 836 P.2d at 706-07. The court explained:

> [W]hen two or more competing, plausible interpretations prove to be reasonable after all other methods for resolving the dispute over the meaning of particular words fail, then the rule of interpretation against the drafter of the language becomes applicable, because the ambiguity cannot be permitted to survive. It must be resolved.

Id.

On the other hand, where the contract unambiguously expresses the intent to provide

6 - OPINION & ORDER

coverage or to not provide coverage, the contract language is controlling.  See Allstate Ins. Co. v. State Farm Mutual Auto. Ins. Co., 67 Or. App. 623, 627, 679 P.2d 879, 881 (1984) (where contract language is unambiguous, courts will "apply those terms and will not create coverage where none was intended by the contract.").

II.  "Fellow Employee" Exclusion

    A.  The Commercial Policy

    The commercial policy contains the following exclusion:

    **B.  Exclusions**

        This insurance does not apply to any of the following:

        . . .

        **5.  Fellow Employee**

            "Bodily injury" to any fellow "employee" of the "insured" arising
            out of and in the course of the fellow "employee's" employment or
            while performing duties related to the conduct of your business.

Ex. 1 to Dec. 7, 2011 Hendricks Decl. at p. 30.

    The policy does not define "fellow employee."  The dictionary defines "fellow" as "one associated with another as a sharer" or a "companion, comrade, [or] associate[.]"  Webster's Third New Int'l Dict. 836 (2002).  Based on this definition, defendant argues that plaintiff was a "fellow employee" of the "insured" Baller at the time of the accident because plaintiff and Baller were associated with one another as co-workers for Warrenton Fiber at that time.

    Plaintiff argues that the issue is not the definition of the word "fellow," but the definition of the word "employee."  He contends that because neither he nor Baller were getting paid during the trip to the logging site, they were not working and were not under the direction or control of

an employer, and thus, they were not employees.

Given that the policy does not provide a meaningful definition of "employee,"[1] it should be given its plain, ordinary meaning.  "Employee" is defined as "one employed by another usually in a position below the executive level and usually for wages." Websters 743.  The relevant definition of "employ" is "to use or engage the services of" or "to provide with a job that pays wages or a salary or with a means of earning a living[.]"  Id.

Defendant argues that there are no limitations or time period qualifications in the plain and ordinary meaning of the word "employee."  One does not lose one's status as an "employee" simply because one is not being paid at that moment.  In other words, while one might be "off duty," the person is still an employee because an employer has generally engaged the person's services or provided the person with a job or a salary.  Additionally, plaintiff himself has stated that he believed the transportation to the job site was part of his overall compensation.  Ex. 7 to Dec. 22, 2011 Verfurth Decl. (Plf. Depo.) at p. 17  (plaintiff believed that the provision of transportation by Warrenton Fiber to the job site was part of his employment agreement and was something he received in addition to his salary as compensation in some form).

Plaintiff suggests that the word "employee" is ambiguous because it can be interpreted in two different, plausible ways:  the word can be interpreted to mean someone who is actually on the clock and someone who is not on the clock.  I disagree.  The plain, ordinary meaning of "employee" is not restricted to the time when the employee is actually engaged in the work, is on the clock, or is being paid.  The commonsense, ordinary definition of "employee" embraces a

---

[1]  The commercial policy states that "'Employee' includes a 'leased worker'.  'Employee' does not include a 'temporary worker.'"  Ex. 1 to Dec. 7, 2011 Hendricks Decl. at p. 36.

8 - OPINION & ORDER

broad relationship.  I reject plaintiff's ambiguity argument and his argument for an unsupported, narrow definition of employee to mean only when the person is "on the clock."

Plaintiff also argues that the phrase "fellow 'employee' of the 'insured'" is ambiguous. When Baller is substituted for "insured," plaintiff states that the commercial policy may be read either with "fellow employee" modifying Baller, or, "fellow" modifying "employee of Baller."  If the latter, the commercial policy's "fellow employee" exclusion cannot apply because plaintiff was not Baller's employee.  Because, plaintiff argues, the policy can plausibly be read either way, it is ambiguous and so, must be construed against defendant.

I disagree.  Because plaintiff's alternative interpretation is not plausible, the term is not ambiguous.  First, to construe "fellow" to modify "employee of Baller" would make "fellow" superfluous.  If the policy intended to exclude payment for bodily injury to the employee of Baller, it would not need to say "fellow."  Second, to construe "fellow" in this way would, as defendant argues, make the "fellow employee" exclusion redundant to the employer's liability exclusion which excludes coverage for injury to an employee of the insured arising out of and in the course of employment.  Ex. 1 to Dec. 7, 2011 Hendricks Decl. at p. 29.

Thus, I agree with defendant that based on the plain meaning of the undefined terms in the commercial policy "fellow employee" exclusion, plaintiff and Baller were fellow employees.

Defendant next contends that the fellow employee exclusion applies because the bodily injury to plaintiff arose out of and in the course of plaintiff's employment with Warrenton Fiber. In support, defendant primarily relies on I-L Logging Co. v. Manufacturers & Wholesalers Indemnity Exchange, 202 Or. 277, 273 P.2d 212 (1954).  That case concerned the interpretation of an insurance policy provision which excluded coverage for injuries to "any employee of the

9 - OPINION & ORDER

Insured while engaged in the employment of the Insured[.]"  Id. at 280, 273 P.2d at 212.  An

employee of the plaintiff's was injured in an accident while being transported by another

employee of the plaintiff's in a vehicle owned by the plaintiff after finishing the day's work at a

logging site.  The vehicle, referred to by the parties as a "crummy" was, at the time, on a private

logging road which the plaintiff had constructed and over which it had control.  Id. at 284, 273

P.2d at 214.  The employees were not paid for the time spent traveling in the crummy.  Id.  The

employees performed no duties for the plaintiff while riding the crummy.  Id.

The plaintiff supplied the transportation service because it was good business for it to do

so.  Id. at 281, 273 P.2d at 213.  It was unsafe for the employees to drive their own cars on the

road and there was insufficient parking space for private vehicles at the logging operation site.

Id. at 284, 273 P.2d at 214.  There was no other practical way for the employees to get to and

from the logging site other than the crummy.  Id. at 281, 273 P.2d at 213.  When hired,

employees were told that the plaintiff furnished transportation to and from the woods.  Id. at 283,

273 P.2d at 214.

The question for the court was whether the employees were "engaged in the employment

of the Insured" at the time of the accident.  If they were, the insurance policy exclusion applied

and the defendant was not liable for the injuries.

After a lengthy discussion of several cases from Oregon and around the country, the I-L

Logging court rejected the plaintiff's argument that the prior Oregon cases were distinguishable

because the language of the policy at issue was not the same as the "arising out of and in the

course of" language construed in the Oregon cases, and because, even under that language, they

were not in an accident "arising out of and in the course of their employment" when they had

10 - OPINION & ORDER

finished their day's work, were no longer "engaged" in their employment when they entered the crummy, and were members of the common public at the time of the accident. Id. at 286-306, 273 P.2d at 216-24.

First, the court explained that it had found no decision which "endeavors to disclose any difference in meaning between 'engaged in the employment' and 'arising out of and in the course of his employment.'" Id. at 305, 273 P.2d at 224. It explained that the "practical affairs of life . . . would gain nothing of consequence if a court should undertake to discover a difference in the connotation of those two groups of words." Id. at 305-06, 273 P.2d at 224.

Second, the court found the following factors relevant to the conclusion that at the time of the accident, the employees were "engaged" in their employment: "(1) they were the plaintiff's employees; (2) they were still in the plaintiff's plant; (3) they were still under the plaintiff's control; (4) they were doing something which was essential to the plaintiff's operations; and (5) their presence in the bus was, for all practical purposes, a condition of their contract of employment." Id. at 307, 273 P.2d at 224. The court explained that transportation of the workers was "vital to the plaintiff's operation" and other than constructing a road suitable for private vehicles, "it was incumbent upon the plaintiff to haul its men back and forth." Id. at 306, 273 P.2d at 224. The court found that transportation for the employees was an incidental, if not express, term of the contract of employment between the plaintiff and its employees. Id. at 307, 273 P.2d at 224.

In a separate opinion denying the plaintiff's petition for rehearing, the court confirmed the holding of its prior decision that the "phrase 'while engaged in the employment' as used in defendant's policy, has the same meaning as the phrase 'arising out of and in the course of his

employment', used in Workmen's Compensation Acts."  202 Or. 277, 325, 275 P.2d 226, 235.  It then explained that an employer may agree, either expressly or impliedly, that the employment relationship between the employer and the employee may continue during the "going and coming" period and if so, an accidental injury sustained by the employee while going and coming is one that "arises out of and in the course of the employment"  Id. at 326, 275 P.2d at 235.  This is particularly true, the court noted, where the employer furnishes transportation to and from the workplace as a necessary part of the employment contract.  Id.  The situation may also arise where in lieu of providing transportation, the employer pays the employee an extra sum of money to cover the costs of transportation or compensates the employee for the time required in coming and going to work.  Id.  In the end, the court said, "[e]ach case is decided upon its own facts."  Id.

In 2008, the Oregon Court of Appeals cited I-L Logging in discussing the "going and coming rule" and the "employer conveyance" exception to that rule.  Dehiya v. Spencer, 221 Or. App. 539, 191 P.3d 730 (2008).  Although the case did not involve the interpretation of an insurance policy, it did involve the question of whether the plaintiff's negligence claim against a co-worker was precluded by the exclusive remedy provision of the workers' compensation laws. The issue was whether the plaintiff's injuries arose out of and in the course of his employment.

The plaintiff was a passenger in a truck driven by his co-worker, the defendant.  During the work week, they stayed at an RV park.  The employer provided the defendant with a company truck which he used for personal tasks unrelated to his job duties as well as to transport material and workers to job sites.  The defendant's supervisor was aware that the defendant usually drove the plaintiff to and from the job site.

On the day of the accident, the defendant and the plaintiff went out for dinner and drinks

12 - OPINION & ORDER

at a tavern on the way back to the RV park.  While returning to the RV park after leaving the tavern, the defendant lost control of the truck, resulting in an accident that injured the plaintiff. The plaintiff sued the defendant.  The defendant argued that the plaintiff's exclusive remedy was under the workers' compensation laws, not against the defendant personally.  The trial court agreed, and the plaintiff appealed.

The plaintiff argued that his injury did not arise out of or occur in the course of employment because he and the defendant had abandoned their employment when they began drinking excessively.  Id. at 544, 191 P.3d at 733.   The court explained the "going and coming" rule in workers' compensation law which "provides that an injury sustained while a worker is going to or coming from work is not considered to have occurred in the course of employment." Id. at 546, 191 P.3d at 546.  Then, the court explained "the employer conveyance rule," an exception to the "going and coming rule."  Id. (citing I-L Logging).  The court stated:  "The employer conveyance rule provides that when the journey to or from work is made in the employer's conveyance, the journey is in the course of employment, the reason being that the risks of the employment continue throughout the journey."  Id. (internal quotation marks and brackets omitted).  The "employer's act of supplying travel compensation or a vehicle is evidence of the status of the journey as part of the compensated employment."  Id. (internal quotation marks omitted).  Citing and quoting from I-L Logging, the court noted that the Oregon Supreme Court had previously recognized the employer conveyance rule when the employer provides the vehicle and the transportation to and from the job site.  Id. & at n.5.

The court held that the employer conveyance rule applied, that the plaintiff's injuries arose out of and occurred in the course of employment, and thus, that the worker's compensation

exclusivity provision applied.  The court noted that by transporting the plaintiff to and from work in its truck, the employer exposed the plaintiff to the risk of a vehicular accident.  Id. at 547, 191 P.3d at 734.  Additionally, the injury occurred in the course of employment because it occurred "at a place where a worker reasonably may be expected to be, and while the worker is doing something reasonably incident to it.  That is, plaintiff's activity of riding in the employer's truck back to the Redmond RV park is reasonably incidental to his employment."  Id. (internal quotation marks and ellipsis omitted).

Defendant relies on both I-L Logging and Dehiya to argue that here, the fact that plaintiff was being driven by a co-worker in the employer's vehicle to the job site shows that plaintiff's injuries arise out of and in the course of his employment, and further, the fact that plaintiff was not being paid is not controlling, just as it was not controlling in I-L Logging and Dehiya.  While Dehiya was a worker's compensation case, the phrase in the insurance policy here is almost identical to the language in the workers' compensation statutes, and as suggested by the I-L Logging court, there is no purpose served by parsing any differences in the language.  See also Progressive Cas. Ins. Co. v. Marca, 100 Or. App. 726, 729, 788 P.2d 490, 491 (1990) (phrase "arising in the course of employment" in liability policy exclusion for bodily injury to employee of an insured arising in the course of employment has the same meaning as in statute defining "compensable injury" for workers' compensation purposes. ORS 656.005(7)(a)).

In his deposition, plaintiff testified that during his interview for employment with Warrenton Fiber, he was told that Warrenton Fiber wold provide transportation to the logging sites.  Ex. 7 to Dec. 22, 2011 Verfurth Decl. (Plf.'s Depo.) at pp. 13-14.  Plaintiff was told that unless he had his own safety equipment, he could not drive his own car.  Id.  As noted above,

14 - OPINION & ORDER

plaintiff believed that the transportation provided by Warrenton Fiber was part of his employment agreement with Warrenton Fiber and was a form of compensation he received in addition to his salary and for which he did not have to pay. Id. at p. 17. Plaintiff did drive himself to the logging sites a couple of times, but because he did not have the proper safety equipment for traveling on the logging roads, "they got pretty mad" and said that plaintiff could get in trouble. Id. at p. 9. Plaintiff understood that if he wanted to stay employed with Warrenton Fiber, he had to ride in the company truck. Id. at p. 11.

John Nygaard, Warrenton Fiber's Vice-President, testified in deposition that employees are required to ride the crew bus to the logging site. Ex. 4 to Supp'l Jan. 2, 2012 Hendricks Decl. (Nygaard Depo.) at p. 10. Warrenton Fiber has provided transportation to its logging sites for the past forty years. Ex. 12 to Dec. 22, 2011 Verfurth Decl. (Nygaard Depo.) at p. 8. Nygaard confirmed that employees are required to ride the crew bus to the logging site and that they are told at the time of hire that Warrenton Fiber provides a "crew bus." Id. at pp. 9-10. Nygaard also explained that because fire and safety equipment is required in vehicles certain times of the year when driving roads to logging sites, Warrenton Fiber chose to use a "crew bus" to relieve it from having to provide that equipment to its employees to carry in their private vehicles. Id. at pp. 10-11.

Mary Iverson, Warrenton Fiber's office manager, testified in deposition that there was no requirement that employees ride to the job site in the company vehicle. Ex. 3 to Supp'l Jan. 2, 2012 Hendricks Decl. (Iverson Depo.) at p. 16. She further stated that there was no agreement between Warrenton Fiber and its employees about Warrenton Fiber providing transportation to the work site. Id. at p. 17. However, Iverson also explained in her deposition that she supervised

office staff, not logging staff, and did not know about the arrangements made for employees to

ride to work together.  Ex. 1 to Supp'l Jan. 27, 2012 Verfurth Decl. (Iverson Depo.) at pp. 5, 22-

23.  She also did not know how Baller came to be assigned a company vehicle.  Id. at p. 25.  She

further stated that if employees were required to have special equipment in order to drive their

own vehicle to a logging site, either Nygaard or Tony Tischer would have that information

because she did not.  Id. at pp. 35-36.

 Defendant argues that the undisputed facts show that this case is remarkably similar to I-L

Logging because in both cases, the employer provided transportation to the employees, the

employees were told transportation would be provided by the employer, and other than riding in

the transportation provided by the employer, the employees had no other practical means, or no

other means at all, of traveling to and from the logging sites.  Additionally, in both situations, if

the employees wanted to continue working for their employer, they had to ride in the employer-

provided transportation and they rode in the employer-provided transportation as an incident of

their employment.  In both cases, transportation was provided by the employer in lieu of doing

something more expensive.

 I agree with defendant.  The fellow employee exclusion of the commercial policy applies

if plaintiff's injuries arose out of and in the course of plaintiff's employment.  I-L Logging and

Dehiya support defendant's argument that first, workers' compensation cases interpreting the

near-identical language of workers' compensation statutes apply, and second, given the

circumstances of plaintiff's transportation by Warrenton Fiber, there is no meaningful way to

distinguish those cases.

 Plaintiff attempts to distinguish I-L Logging because plaintiff here was on a public road,

16 - OPINION & ORDER

not a private logging road.  Plaintiff also notes that he was not actually performing any work-related duties while being transported.  Additionally, plaintiff relies on a federal statute governing wages which provides that:

> the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a)(2).  Plaintiff also relies on Oregon Administrative Rules interpreting Oregon wage laws to assert that normal travel from home to work is not work time.  Or. Admin. R. 839-020-0045.  Finally, plaintiff notes that because workers' compensation cases analyze the workers' compensation statutes broadly in order to afford protection to the employee, and insurance cases require that exclusionary language be read narrowly, the workers' compensation cases are not controlling in the insurance context.

None of plaintiff's arguments is persuasive.  As defendant notes, while the court in I-L Logging mentioned that the logging road was private, the plaintiff in Dehiya was on a public road and the court reached the same conclusion.  Not actually performing work at the time and not being paid were not relevant to the conclusions reached in I-L Logging and Dehiya. Additionally, the fact that wage-related statutes indicate that commuting time, even in an employer's vehicle, is not work, is not relevant because, as explained in my prior opinion in this case denying plaintiff's motion to add Warrenton Fiber as a defendant, the issues and standards are different.  Dkt. #31.  The wage statutes are not interpreting "course and scope" language. Whether an employee should be paid for commute time is an entirely separate issue from

17 - OPINION & ORDER

whether the employee was in the course and scope of his employment while being transported. The fact that the employee was not being paid is not determinative of whether an employee was in the course and scope of his employment.

Finally, Oregon cases have rejected plaintiff's argument that the workers' compensation statutory language should carry a different interpretation than near-identical language in an insurance policy.  In I-L Logging, the court expressly noted the difference:  "We recognize, . . ., that insurance policies, especially their exclusion clauses, must be strictly construed against the insurer and that, since workmen's compensation legislation is remedial in character, it must be liberally construed in favor of the workingman."  I-L Logging, 202 Or. at 304-05, 273 P.2d at 223.  Nonetheless, even though the court saw "merit in the distinction," the court relied on workers' compensation cases and the statutory phrase of "arising out of and in the course of his employment," in interpreting the meaning of the policy term "engaged in the employment."  Id. And, as previously stated above, in Marca, the court held that the phrase in the insurance policy provision excluding from coverage bodily injury "arising in the course of employment" had the same meaning as in O.R.S. 656.005(7)(a) (defining "compensable injury" for purposes of workers' compensation as "an accidental injury, . . . out of and in the course of employment requiring medical services or resulting in disability or death.").  100 Or. App. at 729, 788 P.2d at 491.

I reject plaintiff's arguments and conclude that as a matter of law, the fellow employee exclusion in the commercial policy applies here.

B.  The Umbrella Policy

The umbrella policy uses slightly different language than the commercial policy:

18 - OPINION & ORDER

V.  Exclusions

This insurance does not apply to:

I.      Liability of any employee with respect to **Bodily Injury** or
        **personal Injury** to another employee of the same employer injured
        in the course of such employment.

Ex. 3 to Dec. 22, 2011 Verfurth Decl. at p. 10.

The parties make no separate arguments as to the umbrella policy even though the

language is a bit different.  The result is  the same.

III.  Financial Responsibility Law

Plaintiff argues that if the fellow employee exclusion applies, the exclusion is nonetheless

unenforceable under Oregon's Financial Responsibility Laws, O.R.S. 806.010 - 806.300.  These

laws "basically require those who may be liable for damages arising out of the use of a motor

vehicle to be able to pay damages up to certain specified amounts, either through insurance or by

establishing their ability to pay through certain other means."  Strawn v. Farmers Ins. Co. of Or.,

350 Or. 336, 360 n.17, 258 P.3d 1199, 1214 n.17 (2011), cert. granted, 132 S. Ct. 1142 (U.S. Jan.

23, 2012) (No. 11-445).

To comply with Oregon's financial responsibility laws, a person must obtain a motor

vehicle insurance policy meeting the requirements of O.R.S. 806.080, or become self-insured as

provided under O.R.S. 806.130.  O.R.S. 806.060(2).

If a person uses a "motor vehicle liability policy" to comply with the financial

responsibility requirements of O.R.S. 806.060, the insurance policy must meet the following

requirements:

(a) It must be a policy or part of a policy designating, by explicit description or by

19 - OPINION & ORDER

appropriate reference, all motor vehicles for which coverage is provided by the policy.

(b) It must insure the named insured and all other persons insured under the terms of the policy against loss from the liabilities imposed by law for damages arising out of the ownership, operation, use or maintenance of those motor vehicles by persons insured under the policy. The policy must include in its coverage all persons who, with the consent of the named insured, use the motor vehicles insured under the policy, except for any person specifically excluded from coverage under ORS 742.450.

(c) It must provide the minimum limits of coverage required under ORS 806.070.

O.R.S. 806.080(1).

Because Warrenton Fiber relies on a motor vehicle insurance policy to meet its responsibilities under the laws, the policy must comply with O.R.S. 806.080(1).  Plaintiff argues that when the fellow employee exclusion is applied, the policy is inconsistent with O.R.S. 806.080(1)(b) because it does not include "all persons who, with the consent of the named insured, use the motor vehicles insured under the policy" and there are no applicable exclusions to that requirement under O.R.S. 742.450.  As a result, plaintiff argues, the fellow employee exclusion is unenforceable.

The issue is whether the policy complies with Oregon's financial responsibility laws when it initially provides coverage by covering Baller as an insured permissive driver, and then excepts such liability under the fellow employee exclusion.  Plaintiff argues that without a specific exception allowed by O.R.S. 742.450, the fellow employee exclusion is void and unenforceable because it conflicts with the requirement that permissive drivers be included as insureds.  See O.R.S. 742.450(3) (requiring motor vehicle liability policies to state that the insurance provided is subject to the provisions of the financial responsibility laws); O.R.S.

20 - OPINION & ORDER

742.038 (stating that an insurance policy which conflicts with the insurance code is invalid ).

Defendant relies on O.R.S. 742.454, which specifically exempts "any liability under any workers' compensation law," or "any liability . . . of an employee of the insured while engaged in the employment . . . of the insured" from the insurance required by O.R.S. 806.080.  O.R.S. 742.454.  There is no dispute that plaintiff receives workers' compensation benefits for his injuries.  Thus, his injuries are a liability under workers' compensation laws and coverage for those injuries is exempt by virtue of O.R.S. 742.454.

Moreover, at least one court has indicated that the application of a fellow employee policy exclusion did not violate Wyoming's identical financial responsibility laws.  In State Farm Mutual Automobile Insurance Co. v. Dyer, 19 F.3d 514 (10th Cir. 1994), two employees of the insured were in an accident while one of them was driving a truck insured by State Farm.  The passenger employee was killed and his estate sued the driver employee.  State Farm brought a declaratory judgment action  seeking a judicial determination that it did not have to defend the driver in the underlying wrongful death action, or to provide indemnity on any judgment that may be entered against the driver.

The Tenth Circuit affirmed the district court's determination that the fellow employee and insured employee exclusions precluded coverage and that each was consistent with Wyoming's financial responsibility laws.  Id. at 521-24.  In addressing those laws, the court concluded that the application of the fellow employee exclusion was not inconsistent with the law's provision exempting "any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment . . . of the insured" from otherwise mandatory coverage.   Id.

The court rejected the argument made by the decedent's estate that the word "insured" in

the financial responsibility law statute referred to the driver employee, and as such precluded application of the exclusion because the decedent was not engaged in the employment of the driver employee.  Id. at 523 (noting that because the Wyoming financial responsibility statutes did not contain a severability-of-interest clause or any other provision suggesting that the Wyoming legislature intended "the insured" to be narrowly construed to mean only the particular individual seeking coverage under the policy, the words "the insured" should be interpreted to refer to any of the insureds).  Thus, because the decedent was an employee of the insured, there was no statutory obligation for State Farm to insure against the liability for the decedent's injuries.  Id. at 523-24.

The court then explained that the fellow employee and insured employee exclusions in the policy were consistent with the purpose and public policy behind the Wyoming compulsory insurance laws and their exceptions.  Id. at 524.  The purpose of the financial responsibility laws is to protect members of the general public.  Id.  Employee exclusions are aimed at employees as opposed to members of the general public because "employees are already covered by worker's compensation insurance and thus do not need security for the payment of their damages."  Id. (internal quotation marks omitted).  The employee exclusions at issue in the case "simply mirror, or adopt the statutorily recognized exception to the compulsory insurance law" in Wyoming's financial responsibility law.  Id.  Thus, the policy exclusions were consistent with the statutory exclusions and the public policy for compulsory insurance statutes.  Id.

The same reasoning applies here.  Oregon's laws are identical to the Wyoming statute examined by the Dyer court.  The application of the fellow employee policy exclusion in this case does not violate Oregon's financial responsibility laws because the purpose of the

22 - OPINION & ORDER

compulsory insurance law does not require that an employee of the insured or a fellow employee who is receiving workers' compensation benefits be covered under the policy to receive compensation for his or her injuries.

Because plaintiff is covered by workers' compensation, he cannot argue that he is left without a source of compensation for his injuries and there is no conflict with the public policy behind Oregon's financial responsibility laws. Application of the fellow-employee exclusion in this case is not inconsistent with those laws.

I decline to address defendant's alternative arguments.

CONCLUSION

Defendant's motion for summary judgment [18] is granted. Plaintiff's motion for summary judgment [12] is granted on the issue of coverage, but is otherwise denied.

IT IS SO ORDERED.

Dated this _____ 20th _____ day of _____ March _____, 2012

Marco A. Hernandez
United States District Judge

23 - OPINION & ORDER